## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KENNETH SORENSEN,  #408282, 1782085,   *

Plaintiff,                              *

v.                                      *     Civil Action No. PWG-15-1198
                                              Consol. Civil Action No. PWG-15-3041

JOHN WOLFE, Warden, Jessup Correctional *
  Institution,
S. PRIGGS, Case Manager,                *
LT. BARNETT, Correctional Officer
CAPTAIN SHAW, Correctional Officer,     *
DR. MOORE, Psychologist,
CAROL JACKSON, Chief Medical            *
  Supervisor,
GEORGE ALLEN, Case Manager,             *
ROBERT JORDAN, Correctional Officer,
LT. LEGRAND,                            *
KEVIN J. McCOMANT,
SERGEANT SHEKEY SELLMAN,                *
FRANK B. BISHOP, JR.,
RICHARD J. GRAHAM, JR.,                 *
MICHAEL P. THOMAS,
W. SLATE,                               *
RONALD GORDON,
ROBERT TICHNELL,                        *
DAVID SIPES,
E. CLARK,                               *
"BULTER,"
"LIKIN,"                                *
J. MONROE,
"KARUNZIE,"                             *
JANE DOE #2, Escorting Transportation
  Officer,                              *

Consol. Defendants.                     *
                         ***

## MEMORANDUM OPINION

### Background

Self-represented plaintiff Kenneth Sorensen filed a 42 U.S.C. § 1983 civil rights complaint, as amended and supplemented, requesting damages and injunctive relief. Compl.,

ECF No. 1; Am. Compl., ECF No. 9; Suppl. Compl. No. 1, ECF No. 21; Suppl. Compl. No. 2,

ECF No. 35; Suppl. Compl. No. 3, ECF No. 43; Suppl. Compl. No. 4, ECF No. 52; Suppl.

Compl. No. 5, ECF No. 55; Suppl. Compl. No. 6, ECF No. 64.[1]  Sorensen, who is an inmate in

the custody of the Maryland Division of Correction, claims Defendants failed to protect him

from harm during the time he was incarcerated at Western Correctional Institution ("WCI")

when, shortly after Sorensen informed on a fellow inmate, the prison staff placed a prison-gang

member in Sorensen's cell and the inmate upon whom Sorensen informed in the neighboring

cell.  Suppl. Compl. No. 2, at 22–24.[2]  Further, he claims Defendants unlawfully retaliated

against and harassed him; subjected him to unconstitutional conditions of confinement; denied

him necessary medical and dental care; denied his request to attend religious services; and denied

him due process and equal protection under the Fourteenth Amendment during the time he was

incarcerated at Jessup Correctional Institution ("JCI").  Compl. 10–15, 18–19; Suppl. Compl.

No. 2, at 43, 51.  Sorenson is presently housed on protective custody at Eastern Correctional

Institution ("ECI").

Pending is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary

Judgment, ECF No. 57, which Sorensen has opposed, ECF No. 62.  Also pending is Sorensen's

Motion for a Preliminary Injunction.[3]  ECF No. 66.  No hearing is necessary.  *See* Loc. R. 105.6.

---

[1] With Sorensen's Supplement to the Amended Complaint docketed at ECF No. 55, he filed unsigned declarations that he appears to have written on behalf of eleven Defendants.  ECF Nos. 55-5 to -15.  These filings will not be considered.  Insofar as Sorensen belatedly attempts to amend the Complaint to name Claudia Howard, a psychiatrist at the Maryland Correctional Institution-Hagerstown ("MCI-H"), and Anna Hartle, an administrative remedy coordinator at MCI-H, these claims are not pertinent to matters at issue here and will not be considered. Sorensen may pursue his MCI-H claims by filing a separate complaint.

[2] Page numbers for citations to the Complaint, Amended Complaint, and Supplements to the Amended Complaint, along with the accompanying attachments, refer to the CM/ECF page numbers.

[3] This is Sorensen's third motion for preliminary injunctive relief.  In his first, Sorensen sought

For reasons stated herein, Defendants' motion will be treated as a motion for summary judgment, and will be granted in part and denied in part without prejudice to renewal within twenty-eight days. Plaintiff's Motion for Preliminary Injunctive Relief will be denied.

## Standard of Review

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). The existence of only a "scintilla of evidence" is not enough avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact could reasonably find for the party opposing summary judgment. *Id.* "In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Downing v. Balt. City Bd. of Sch. Comm'rs*, No.

---

injunctive relief concerning the screening, housing, and treatment of all inmates for mental illness, appointment of a psychiatric expert to monitor Defendants' compliance, immediate access for all inmates on long-term and continuous segregation to outdoor recreation, televisions, microwaves, hot pots, improved ventilation, mandatory cell cleaning, improved dental health treatment, and better pest control. ECF No. 4. I denied the motion on January 3, 2015. ECF No. 7. Sorensen's second Motion for Preliminary Injunctive Relief was filed in consolidated Civil Action No. PWG-15-3041 and sought preparation of a report of the findings-of-fact for each grievance he submitted concerning his transfer to JCI. I denied that Motion on October 23, 2015. ECF No. 34.

RDB-12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Sorensen has filed voluminous attachments including records, lengthy handwritten statements and declarations, and other documents, some of which are not relevant to matters at issue, in support of his claim.[4] Defendants have submitted declarations and verified records with their dispositive motion. ECF Nos. 57-2 to -7.

The Court may consider a wider array of documents when it treats a motion to dismiss as a motion for summary judgment, which it may do pursuant to Fed. R. Civ. P. 12(d). *See Syncrude Canada, Ltd. v. Highland Consulting Grp., Inc.*, 916 F. Supp. 2d 620, 623 (D. Md. 2013). When the Court does so, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Notably, "the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion." *Ridgell v. Astrue*, DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012). Thus, this requirement "can be satisfied when a party is 'aware that material outside the pleadings is before the court.'" *Walker v. Univ. of Md. Med. Sys. Corp.*, No. CCB-12-3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th

---

[4] On April 27, 2015, Sorensen filed a 36-page handwritten complaint and more than 150 pages of attachments, including a separate declaration. ECF Nos. 1, 1-1 to -31. On May 8, 2015, I ordered him to supplement the Complaint. ECF No. 5. On June 5, 2015, Sorensen filed an Amended Complaint with approximately 300 pages of attachments and handwritten filings, including another declaration. ECF Nos. 9, 9-1 to -9. On July 7, 2015, Sorensen filed a 40-page Supplement to the Complaint with 43 pages of attachments. ECF Nos. 21, 21-1. On October 23, 2015, I granted Sorensen's request to consolidate this case with Civil Action No. PWG-15-3041. ECF No. 33. I ordered the Complaint in that case docketed as a supplement at ECF No. 35 in the instant matter, and directed Sorensen to further supplement his claims that he was physically assaulted and denied religious service attendance during the time he was incarcerated at Jessup Correctional Institution. ECF No. 34. Sorensen has since filed four additional supplements. ECF Nos. 43, 54, 55, 64.

Cir. 1985)). Though the Court "clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, [it] does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Here, Defendants designate their motion as a motion to dismiss, or in the alternative, motion for summary judgment. Further, Sorensen was provided the opportunity to dispute these exhibits and has done so. *See* Pl.'s Opp'n, ECF No. 62. For these reasons, it is appropriate to treat Defendants' motion as a motion for summary judgment, and I will consider the exhibits attached to it.

## Discussion

### Exhaustion of Administrative Remedies

Defendants have raised the affirmative defense of failure to exhaust administrative remedies with regard to Sorensen's claims pertaining to his incarceration at WCI and several of the claims pertaining to his incarceration at JCI. On that basis, they argue that the claims must be dismissed. Defs.' Mem. 8–10, ECF No. 57-1.

The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

This requirement is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). In Maryland, filing a request for administrative remedy with the Warden is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners. *See* Md. Code Ann., Corr. Servs. § 10-206; Md. Code Regs. 12.07.01.02(D); Md. Div. Corr. Directive 18B5-002, § V.B. If this request is denied, the

5

prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. Md. Div. Corr. Directive 18B5-002, § VI.M.1. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). Md. Code Regs. 12.07.01.05(B).

The purpose of exhaustion is to: 1) allow a prison to address complaints about the program it administers before being subjected to suit; 2) reduce litigation to the extent complaints are satisfactorily resolved; and 3) prepare a useful record in the event of litigation. *Jones v. Bock*, 549 U.S. 199, 219 (2007). An inmate's failure to exhaust administrative remedies is an affirmative defense; the defendant bears the burden of proving that the prisoner had remedies available to him of which he failed to take advantage. *Id.* at 216; *Corey v. Daniels*, 625 Fed. App'x 414, 415 (4th Cir. 2015) (per curiam); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Although an inmate "must exhaust available remedies," he "need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. In *Ross v. Blake*, the Supreme Court of the United States identified three circumstances when an administrative remedy is unavailable. First, an administrative procedure is unavailable when, despite what regulations or guidance materials may promise, it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart

inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Sorensen concedes his failure to exhaust claims arising from the time he was at WCI. Pl.'s Opp'n 8. But he argues that he "did not know the ARP process even existed until Oct[.] or November 2013." *Id.* Sorensen does not contend, however, that the process was a "dead end" or too difficult to "discern or navigate" or that officials at WCI sought to hide or otherwise hinder access to the process. *See Ross*, 136 S. Ct. at 1859. Sorensen's conclusory and unsupported statement is insufficient to demonstrate that administrative remedies were unavailable to him. *See id.* Accordingly, his failure to protect claim based on his incarceration at and transfer from WCI will be dismissed as unexhausted. *See* 42 U.S.C. § 1997e(a).

Defendants also contend that Sorensen's claims regarding conditions of confinement at JCI are unexhausted because Sorensen did not file any grievance addressing lack of recreation time, pest control problems, or lack of amenities available to inmates in administrative segregation at JCI. Defs.' Mem. 10; Neverdon Decl. ¶ 7, Defs.' Mem. Ex. 6, ECF No. 57-7. Defendants further argue that Sorensen's claims regarding harassment and retaliation by JCI corrections staff are unexhausted because the IGO did not adjudicate the relevant claims until October 29, 2015, well after Sorensen filed his complaint on April 27, 2015. Defs.' Mem. 10; Neverdon Decl. ¶¶ 10–13, 15. Furthermore, though Defendants do not appear to raise exhaustion as a defense to any of Sorensen's other JCI claims, IGO Executive Director Russell A. Neverdon's Declaration suggests that several other claims are unexhausted as well. *See* Neverdon Decl. ¶¶ 4, 6–16. Neverdon admits that Sorensen exhausted his claim pertaining to denial of dental services, Neverdon Decl. ¶ 4, but then lists several other grievances that the IGO received on October 6, 2015, after Sorensen already had initiated this federal litigation with

7

regard to the same grievances, *see id.* ¶¶ 6, 8–16.   Sorensen addresses Neverdon's account by listing a number of ARPs that he says Neverdon "[p]urposely omitted[,] including several final adjudications." Pl.'s Opp'n 4.   But (with the exception of the denial of dental services claims) he admits that the ARPs raising the grievances at issue in this lawsuit were not filed until October 6, 2015 and that they were not adjudicated until October 29, 2015, six months after he filed suit on April 27, 2015. *Id.* at 4, 6.   Sorensen does not therefore provide evidence of any exhausted claim other than the dental claims that Neverdon acknowledges were exhausted.

Although exhaustion is not a jurisdictional requirement under the PLRA, *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), the Federal Rules of Civil Procedure direct courts to construe the Rules to ensure "the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1.   As discussed above, the Neverdon Declaration indicates that Sorensen has only successfully exhausted claims related to denial of dental treatment.   Sorensen responded to this declaration by admitting that his other claims were not adjudicated until after he initiated his federal lawsuit.   In the interest of just and speedy resolution of the issues raised in this proceeding, I will construe the Neverdon Declaration as an extension of the Defendants' motion and will dismiss as unexhausted Sorensen's JCI claims, except those relating to denial of dental services. *See* Fed. R. Civ. P. 1.

### Deliberate Indifference to Medical Needs

In the remaining claims, Sorensen complains that he was not escorted to the dental unit for treatment he requested on January 23, 2013; February 25, 2013; August 13, 2013; October 10, 2013; November 25, 2013; December 20, 2013; February 26, 2014; April 14, 2014; September 11, 2014; and another time in April of 2014, although the date is unspecified. Compl. 18.   As a result, he did not receive the dental care he felt he needed. *Id.*   Sorensen maintains that

8

he did not refuse dental treatment after June 13, 2013. *Id.* He claims that he is missing nine top teeth and lacks a partial denture to keep his five bottom teeth straight, causing him to suffer disfigurement and difficulty eating. *Id.* Additionally, Sorensen claims he suffered "sensitivity and pressure and then throbbing pain for approximately 3 months" starting on January 15, 2014, until his tooth was filled on June 13, 2014. *Id.* Sorensen blames Sergeant Robert Jordan for covering up what he characterizes as an "illegal no-escort policy" that prevented him from receiving dental care. Sorensen Decl. 15, ECF No. 9-8.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. A prison official violates the Eighth Amendment when the official shows "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "Denial of dental care is considered a denial of medical care." *Shipe v. Mumby & Simmons*, No. DKC-12-561, 2012 WL 5417332, at *2 (D. Md. Nov. 5, 2012) (citing *Hunt v. Dental Dep't*, 865 F.2d 198 (9th Cir. 1989)). To be "serious," the condition must be "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson*, 775 F.3d at 178 (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)) (internal quotation marks omitted).

"An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (internal quotation marks omitted). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). Thus, a

deliberate indifference claim has both an objective component—that there objectively exists a serious medical condition and an excessive risk to the inmate's health and safety—and a subjective component—that the official subjectively knew of the condition and risk. *Farmer*, 511 U.S. at 834, 837 (holding that an official must have "knowledge" of a risk of harm, which must be an "objectively, sufficiently serious").

Defendants do not argue that Sorensen did not suffer from a serious medical condition, but they insist that Sorensen "fails to indicate that any particular Defendant recognized a serious condition and purposely ignored it or interfered with access to the dentist." Defs.' Mem. 16. But Sorensen asserts that Sergeant Jordan knew of his difficulty securing an escort to dental appointments because he "was present with Warden Wolfe on August 19, 2014 when [he] showed" both individuals records of his failure to obtain an escort. Compl. 19. Further, Sorensen holds Sergeant Jordan "personally responsible in a conspiracy to cover up [an] illegal no-escort policy to dental . . . ." Sorensen Decl. 15. Moreover, while Director Neverdon attests that the IGO dismissed Sorensen's dental claims as a grievance without merit, Neverdon Decl. ¶ 4, Defendants have not provided any record from the IGO hearing or a copy of the office's determination. Consequently, Defendants have not carried their burden of showing that they are entitled to summary judgment. Because genuine issues of material fact remain, summary judgment will be denied without prejudice to renewal as to the dental claims.

## Motion for Preliminary Injunction

Sorensen asks in his Motion for Preliminary Injunction for an order directing ECI prison officials to return his "stolen mail" and to cease interfering with its delivery. Pl.'s Mot. 3–4. Sorensen also states that he is unsafe at ECI, and is again the object of retaliation. Pl.'s Mem. 5, ECF No. 66-1. Sorensen's attempt to introduce new defendants and facts that are alleged to have

10

occurred at another facility at a later time must be raised in a separate complaint.  He may not circumvent the Federal Rules of Civil Procedure by presenting his new claims in a Motion for Preliminary Injunctive Relief.  *See Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action.").

Further, Sorensen fails to meet the standard for preliminary injunctive relief.  A party seeking a preliminary injunction or temporary restraining order must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009).  A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689–90 (2008).  In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).  A plaintiff must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Grp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

Sorensen's generally-stated claims that he fears for his safety are presented without any supporting facts.  These conclusory claims fail to demonstrate that he is facing irreparable harm in the absence of some unspecified injunctive relief, or that the harm is neither "remote nor speculative, but actual and imminent." *Direx*, 952 F.2d at 812.  Simply stated, he fails to meet

his burden of demonstrating that he is likely to suffer irreparable harm in the absence of preliminary relief, that an injunction would serve the public interest, and that the equities tips in his favor. *See Winter*, 55 U.S. at 20. Therefore, his request for preliminary injunctive will be denied.

### Conclusion

For the reasons stated in this Memorandum Opinion, I will grant in part and deny in part without prejudice to renewal within twenty-eight days Defendants' Motion for Summary Judgment. I will grant summary judgment as to all claims arising from Sorensen's incarceration at and transfer from WCI and all claims arising from Sorensen's incarceration at JCI, except for those pertaining to his dental care. Accordingly Frank B. Bishop, Jr., Richard J. Graham, Jr., Michael P. Thomas, W.Slate, Robert Gordon, Robert Tichnell, David Sipes, E. Clark, "Butler," "Likin," J.Monroe, "Karunzie," Jane Doe #2, Dr. Moore, Kevin McComant, and Carol Jackson will be dismissed as Defendants. The remaining Defendants will be granted twenty-eight days to file a renewed motion for summary judgment as to Sorensen's claims that he was denied dental care. Sorensen will be given an opportunity to respond to the renewed motion. Sorensen's Motion for Preliminary Injunction is denied.

A separate Order shall be entered reflecting this Memorandum Opinion.

_September 9, 2016_
Date

_____
Paul W. Grimm
United States District Judge